**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-00674-REB-AP
(Bankruptcy Case No. 14-14536-SBB - Chapter 7)

In re: LU ANN RATZLAFF CRAIG,

    Debtor.

---

Adversary No. 14-01507-SBB

DOUGLAS E. LARSON, Chapter 7 Trustee,

    Plaintiff-Appellee,

v.

SWIFT ROCK FINANCIAL, INC., d/b/a WORLD LAW GROUP, d/b/a WORLD LAW DEBT;
ORION PROCESSING, LLC, d/b/a WORLD LAW PROCESSING,

    Defendants,

GLOBAL CLIENT SOLUTIONS, LLC,

    Defendant-Appellant.

---

**ORDER AFFIRMING THE ORDER OF
THE UNITED STATES BANKRUPTCY COURT**

**Blackburn, J.**

    Defendant-appellant Global Client Solutions, LLC (GCS) filed a timely appeal of an order of the United States Bankruptcy Court for the District of Colorado. In that order, the bankruptcy court denied the motion to compel arbitration filed by GCS. As

the appellant, GCS filed an opening brief [#10][1], the appellee, Douglas E. Larson as the Chapter 7 Trustee in the underlying bankruptcy case, filed a response brief [#19], and GCS filed a reply brief [#22]. I affirm the order of the bankruptcy court.

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II. STANDARD OF REVIEW

I am bound by the bankruptcy court's findings of fact, unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*, 232 B.R. 799, *800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995)(internal citations omitted)); *In re Dinviney*, 225 B.R. 762, *769 (10th Cir. BAP (Okla.), 1998) (internal citations

---

[1] "[#10]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2

omitted). I review *de novo* conclusions of law reached by the bankruptcy court. ***In re Mullet**,* 817 F.2d 677, 678 (10th Cir.1987).

## III.  BACKGROUND

On June 7, 2012, the debtor, Lu Ann Ratzlaff Craig, entered into a contract with co-defendants Swift Rock Financial, Inc. d/b/a World Law Group, d/b/a World Law Debt (WLD) and Orion Processing LLC, d/b/a World Law Processing (WLP). Under the contract, WLD and WLP would provide Ms. Craig with certain debt resolution services. On the same date, Ms. Craig entered into a second agreement with Global Client Solutions, LLC (Global) for dedicated account services. Ms. Craig signed a Dedicated Account Agreement & Application (DAAA) requesting that Global establish and maintain a Dedicated Account in connection with her debt resolution program with WLD. Accordingly, Global established and maintained a Dedicated Account for Ms. Craig. In the DAAA, Ms. Craig acknowledged and agreed that Global is not a party to her debt resolution program and that any dispute between Global and Ms. Craig must be resolved in arbitration.

Under her contract with WLD and WLP, Ms. Craig paid WLD and WLP 9,154.89 dollars in fees. Using funds deposited in her Dedicated Account, Ms. Craig paid 4,100.00 dollars to one of her creditors in full or partial settlement of her debt to that creditor. Ms. Craig paid a total of 179.60 dollars in fees to Global, including a 5.00 dollar account set up fee, a monthly service charge of 9.45 dollars, and 1.50 dollars for each payment by phone. On November 18, 2013, Ms. Craig withdrew the remaining $65.51 from her Dedicated Account before closing the account and terminating her

relationship with Global. On April 18, 2014, Ms. Craig filed for relief under Chapter 7 of the Bankruptcy Code.

In a complaint filed in the bankruptcy court, the Chapter 7 Trustee asserts claims against WLD, WLP, and Global. *Complaint*, [#5-1], pp. 4 - 8. The trustee seeks to recover the payments made by Ms. Craig to WLD, WLP, and Global, totaling 9,334.49 dollars.

In the First Claim for Relief, the trustee seeks to recover these payments under 11 U.S.C. § 548(a)(1)(B). In the Second Claim for Relief, the trustee seeks to recover the same fees under §12-14.5-235, C.R.S., which is part of the Colorado Uniform Debt Management Services Act (CUDMSA). The trustee alleges the fees charged to Ms. Craig were in excess of the fees permitted under §§12-14.5-223 and 224, C.R.S. The trustee asserts the CUDMSA claim on behalf of the debtor in an effort to recover property of the bankruptcy estate. The trustee alleges that the defendants "have acted in concert to engage in the acts and practices described throughout this Complaint and each Defendant is jointly and severally liable for the acts and practices described below." *Complaint* [#5-1], pp. 4 - 8, ¶ 10.

Global responded to the complaint by moving to compel arbitration of the claims of the trustee under the arbitration clause in the contract between Global and Ms. Craig. Global disputes the allegation that WLD, WLP, and Global acted in concert and are jointly and severally liable. After briefing and hearing, the bankruptcy court denied the motion to compel arbitration. The court found the case brought by the trustee "is fundamentally a fraudulent transfer claim under 11 USC 548 . . . ." *Oral Ruling* [#5-2], CM/ECF p. 54. The § 548 claim is, the court found, "a direct claim by the Trustee and

not a derivative claim of the Debtor and Section 548 simply gives the Trustee direct and substantial avoiding powers for the benefit of the estate and the Trustee's exercising core substantive rights in the Bankruptcy code . . . ." **Oral Ruling Regarding the Defendant Global Client Solutions, LLC's Motion to Compel Arbitration under the Federal Arbitration Act and Alternative Motion to Dismiss the Adversary Complaint Filed November 13, 2014 (Docket #7 and #8) and Plaintiff's Response Filed December 5, 2014 (Docket #13)** [#5-2], CM/ECF p. 54.  The bankruptcy court found that the § 548 claim is a core proceeding.[2]

Contrastingly, the bankruptcy court found that the CUDMSA state law claim, the second claim for relief, is not a core proceeding.  **Oral Ruling Regarding the Defendant Global Client Solutions, LLC's Motion to Compel Arbitration under the Federal Arbitration Act and Alternative Motion to Dismiss the Adversary Complaint Filed November 13, 2014 (Docket #7 and #8) and Plaintiff's Response Filed December 5, 2014 (Docket #13)** [#5-2], CM/ECF pp. 51 - 61.  The bankruptcy court re-stated and supplemented the bases for its ruling in its **Order Certifying Global Client Solutions, LLC's Appeal as Frivolous and Denying Motion To Stay Adversary Proceeding** [#18].[3]  The court found that neither claim of the trustee, in the

---

[2] 28 U.S.C. § 157(b) defines what is a core proceeding in bankruptcy.  Generally, core proceedings involve administration of the bankruptcy estate and are based on bankruptcy law.  Bankruptcy judges may hear and determine core proceedings.  A bankruptcy judge also may hear a proceeding that is not a core proceeding but is related to a bankruptcy case. 28 U.S.C. § 157(c).  However, a bankruptcy judge may not make a final determination of a non-core proceeding.  *Id.*  Rather, in a non-core proceeding, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court.  *Id.*

[3] The order of the bankruptcy court denying the motion to stay is docketed in this bankruptcy appeal as [#18].  I cite that order as document [#18] in this case.

context of the bankruptcy of Ms. Craig, is appropriate for arbitration and denied the motion to compel arbitration of Global.

Global then filed this appeal and a motion to stay the adversary proceeding in the bankruptcy court pending its appeal of the order of the bankruptcy court denying the motion to compel arbitration. In a written order, the bankruptcy court denied the motion to stay. *Order* [#18]. First, the court found that the § 548 avoidance claim of the trustee is not derivative of the rights of the debtor and is not a claim which could be asserted by or on behalf of the debtor. Rather, the § 548 claim is a statutory claim "created in favor of creditors that can only be prosecuted by a trustee or debtor-in-possession," as opposed to the debtor herself. *Order* [#18], p. 3. Addressing the § 548 claim, the bankruptcy court found that neither the trustee nor the creditors he represents are parties to the arbitration clause asserted by Global. Thus, the court concluded that the arbitration clause has no application to the § 548 claim asserted by the trustee. *Order* [#18], p. 4.

Second, the court found it has discretion to deny enforcement of the arbitration clause as to the CUDMSA claim asserted by the trustee on behalf of the debtor. *Order* [#18], p. 4. Although the court found this claim may be subject to the arbitration clause, it concluded that enforcement of the arbitration clause as to this claim could be denied by the bankruptcy court "if it determines that arbitrating a claim would conflict with the underlying purposes of the Bankruptcy Code." *Order* [#18], p. 4. The court then found that enforcement of the arbitration clause as to the CUDMSA claim "would split the adversary proceeding - consisting of two causes of action with entirely common facts - and conflict with the Bankruptcy Court's timely, efficient, and unified administration of

the Debtor's bankruptcy." *Order* [#18], p. 4.  The two claims, the court found, "involve the same parties, the same facts, and the same payments – and both have an effect on the administration of the Debtor's bankruptcy estate."  *Order* [#18], p. 5.  In addition, the court found arbitration would "impose insurmountable arbitration costs on the no-asset bankruptcy estate," effectively resulting in dismissal of the claims of the trustee.  *Order* [#18], p. 5.

Third, the bankruptcy court found that its decision to deny the motion to compel arbitration and to hear both the § 548 claim and the CUDMSA claim "is clearly within its discretion.  Any argument otherwise is without legal merit."  *Order* [#18], p. 6.  Thus, the bankruptcy court certified the appeal of Global now before this court "as being without merit and frivolous."  *Order* [#18], p. 6.

In its appeal, Global raises five issues.  First, Global contends the § 548 claim of the trustee is a breach of contract claim cast in the guise of a § 548 claim for the purpose of avoiding the arbitration clause.  Second, Global contends the CUDSMA claim is a none-core claim subject to arbitration.  Third, Global contends the arbitration clause is enforceable under Colorado law.  Fourth, and in the alternative, Global asserts that arbitration can proceed, even if the § 548 claim is a non-arbitrable core claim of the trustee, without causing conflict with the purpose of the Bankruptcy Code.  Fifth, Global asserts that litigation of the § 548 claim, if that claim is not subject to the arbitration clause, should be stayed pending arbitration of the CUDSMA claim.

### IV.  ANALYSIS

#### A.  § 548 Claim and Applicability of Arbitration Clause

Title 11 U.S.C. § 548(a)(1)(B) permits the trustee to avoid a transfer of an interest

7

of the debtor in property made or incurred within two years before the date of the bankruptcy petition if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and (a) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; or (b) the debtor was engaged in a transaction for which any property remaining with the debtor was an unreasonably small capital; or (c) the debtor intended to incur, or believed he or she would incur, debts that wold be beyond the debtor's ability to pay.  In the complaint, the trustee alleges that the transactions of the debtor with WLD, WLP, and Global are avoidable under § 548(a)(1)(B).  *Complaint* [#5-1], CM/ECF pp. 4 - 8, ¶¶ 23 - 27.

Global contends the § 548 claim of the trustee is, in reality, "a garden variety contract claim which should be compelled to arbitration" under the arbitration clause. *Brief of Appellant* [#10], p. 13.  According to Global, the § 548 claim of the trustee "is based purely on a garden variety breach of contract allegation." *Brief of Appellant* [#10], p. 18.  A breach of contract claim, Global asserts, is subject to the arbitration clause.

A review of the complaint reveals no allegations in the nature of breach of contract. *Complaint* [#5-1], CM/ECF pp. 4 - 8.  The § 548 claim is, as the bankruptcy court found, based on allegations that Ms. Craig made a transfer to the defendants within two years of the petition date, the transfer was for less than reasonably equivalent value in exchange, and one or more of the requirements of § 548(a)(1)(B)(ii) were satisfied.  *Complaint* [#5-1], CM/ECF pp. 6 - 7, ¶¶ 23 - 27.  To put it mildly, it is disingenuous to describe the § 548 claim of the trustee as "based purely on a garden variety breach of contract allegation." *Brief of Appellant* [#10], p. 18.  Rather, the § 548 claim is a claim for recovery of assets of the debtor based on constructive fraud as

8

defined in § 548.  The less than equivalent value and insolvency factors defined in § 548(a)(1)(B) are the key elements of constructive fraud implicated by this claim.

As § 548 (a)(1) makes plain, a § 548 claim is a claim of the trustee on behalf of creditors.  A § 548 claim is not a claim that may be asserted by a debtor.  The trustee in this case is not a party to the arbitration clause asserted by Global.  Therefore, the arbitration clause is not applicable to the § 548 claim of the trustee.

In sum, the bankruptcy court properly refused to treat the § 548 claim as a breach of contract claim in the guise of an improper § 548 claim.  The bankruptcy court properly treated the § 548 claim as a claim of the trustee and not of the debtor.  On these bases, the bankruptcy court properly found that the arbitration clause asserted by Global has no application to the § 548 claim of the trustee.

### B.  CUDMSA Claim and Applicability of Arbitration Clause

The Federal Arbitration Act (FAA) applies to all arbitration agreements involving interstate commerce.  9 U.S.C. § 2.  The FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. **Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.**, 391 F.3d 1129, 1131 (10th Cir. 2004).  The FAA provides that written arbitration agreements in transactions involving interstate commerce are "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Federal policy strongly favors the arbitration of disputes and requires the federal courts to vigorously enforce agreements to arbitrate.  **Shearson/American Express, Inc. v. McMahon**, 482 U.S. 220, 226 (1987).

"Like any statutory directive, the Arbitration Act's mandate may be overridden by

a contrary congressional command." **McMahon**, 482 U.S. at 226.  A party opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue." **Id**. at 227.  In **McMahon**, the Supreme Court of the United States noted three bases on which a court may determine the intent of Congress in this context: (1) the text of the statute; (2) its legislative history; and (3) whether there is an inherent conflict between arbitration and the underlying purposes of the statute.  **Id**. at 796 - 797.

The third, ninth, and eleventh circuits have held that neither the text nor legislative history of the Bankruptcy Code demonstrates Congressional intent to create a broad exception to the FAA via the Bankruptcy Code.  **In re Eber**, 687 F.3d 1123, 1129 (9th Cir. 2012) (citing cases).  When the FAA and the Bankruptcy Code conflict, the inquiry is "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code."  **In re Thorpe Insulation Co.**, 671 F.3d 1011, 1020 (9th Cir. 2012).  A "bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code."  **Id**. at 1021.  This analysis is applicable to both core proceedings and non-core proceedings.  **In re Mintze**, 434 F.3d 222, 231 (3rd Cir. 2006).

In contrast to the § 548 claim, the CUDMSA claim asserted by the trustee is a non-core claim that is derivative of the debtor.  In other words, when asserting this claim, the trustee stands in the shoes of the debtor.  If the debtor was asserting this claim outside of bankruptcy, the claim on its face would fall within the arbitration clause.

The bankruptcy court found it had discretion to deny arbitration as to this claim "if it determines that arbitrating [the] claim would conflict with the underlying purposes of the Bankruptcy Code." *Order* [#18], p. 6.  I concur.

Addressing this issue, the bankruptcy court noted that the two claims asserted by the trustee "involve the same parties, the same facts, and the same payments – and both have an effect on the administration of the Debtor's bankruptcy estate." [#18], p. 5.  Enforcement of the arbitration clause as to the CUDMSA claim, the court found, would impair the effort to conduct "an expeditious and equitable distribution of the Debtor's assets to her creditors." *Order* [#18], p. 5.  Further, denying arbitration "avoids the potential for competing and/or conflicting orders arising from the arbitration and this Court." *Order* [#18], p. 5.  Equally important, the court found enforcement of the arbitration clause would "impose insurmountable arbitration costs on the no-asset bankruptcy estate, essentially acting as a dismissal of the Trustee's claims." *Order* [#18], p. 5. Ultimately, the bankruptcy court found that it was appropriate to decline to enforce the arbitration clause because denying arbitration "furthers the Bankruptcy Code's fundamental policies of centralized resolution of purely bankruptcy issues; the need to protect creditors and reorganizing debtors from piecemeal litigation; and the undisputed power of a bankruptcy court to enforce its own orders." *Order* [#18], p. 5 (internal quotation omitted).

The factual findings and legal conclusions of the bankruptcy court are amply supported in the record.   None of the factual findings of the bankruptcy court is clearly erroneous.  After *de novo* review, I concur with the legal conclusions of the bankruptcy court.  Given the circumstances of the bankruptcy estate of the debtor and the nature of

the two claims asserted by the trustee, there is an inherent conflict between arbitration of the CUDMSA claim, as demanded by Global, and the underlying purposes of the Bankruptcy Code, as described by the bankruptcy court in its orders.  In the context of this case, enforcing arbitration would substantially undermine the orderly, efficient, and effective administration of the bankruptcy estate.  In addition, requiring arbitration likely would deprive the estate, and thus its creditors, of the possibility of any recovery of assets for the estate.  This conflict is stark.  In the circumstances of this case, the fundamental purposes of the Bankruptcy Code are paramount to the requirements of the arbitration clause and the FAA.

## V.  CONCLUSION & ORDERS

The § 548 claim is a claim of the trustee, not a claim of the debtor.  The trustee is not a party to the arbitration clause.  Therefore, the arbitration clause does not apply to the § 548 claim of the trustee.

The CUDMSA claim falls within the terms of the arbitration clause.  However, enforcement the arbitration clause would substantially undermine the orderly, efficient, and effective administration of the bankruptcy estate.  Under the standards established in *McMahon* and its progeny, the bankruptcy court concluded correctly that, given the circumstances of this case, the fundamental purposes of the Bankruptcy Code take precedence over the requirements of the arbitration clause and the FAA.  Thus, the bankruptcy court properly denied the motion to compel arbitration of Global.

**THEREFORE, IT IS ORDERED** as follows:

1. That the order of the bankruptcy court denying the motion to compel

arbitration filed by defendant Global Client Solutions, LLC, *see* **Oral Ruling Regarding the Defendant Global Client Solutions, LLC's Motion to Compel Arbitration under the Federal Arbitration Act and Alternative Motion to Dismiss the Adversary Complaint Filed November 13, 2014 (Docket #7 and #8) and Plaintiff's Response Filed December 5, 2014 (Docket #13)** [#5-2], CM/ECF pp. 51 - 61, as supplemented in the **Order Certifying Global Client Solutions, LLC's Appeal as Frivolous and Denying Motion To Stay Adversary Proceeding** [#18], is affirmed; and

2. That **Appellant Global Client Solutions, LLC's Motion to Stay Bankruptcy Adversary Proceeding Pending Appeal of the Order Denying Motion to Compel Arbitration and Request for an Expedited Brief Schedule** [#15] and **Appellant Global Client Solutions, LLC Motion for [Telephonic] Oral Argument on its Motion to Stay Bankruptcy Adversary Proceeding Pending Appeal** [#28] are denied as moot.

Dated December 9, 2015, at Denver, Colorado.

**BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge